[No. 8259.   Department One.   November 20, 1909.]

HENRY WOLK, *Respondent*, v. GRANT SMITH *et al.*,
*Appellants.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—PROMISE TO RE-
PAIR—VICE PRINCIPALS—EVIDENCE—SUFFICIENCY.   A timekeeper or
clerk, who gave a promise to repair a chain, during the absence of
the general foreman, was not a superintendent or vice principal as
to the plaintiff, a stone mason, who was injured by the breaking of
the chain, where it appears from plaintiff's evidence that one A.
was the general foreman, that when A. was absent there was no
one to give orders to the plaintiff, who was foreman of his derrick
crew, although he stated that when A. was away the clerk took his
place and was "timekeeper and foreman the way I called him," and
where the other evidence showed that the clerk was merely a time-
keeper in charge of the accounts and supplies and had no part in
the work nor any authority over it or the tools, that when a chain
was broken (which happened frequently) the men got a new one
or repairs from the blacksmith or used a cold-shut, on their own
motion or by direction of the plaintiff, and that plaintiff and the
clerk each had authority to hire men in the absence of the general
foreman; hence the plaintiff cannot avoid the assumption of risks
from the use of a defective chain upon the clerk's promise to repair
the same (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for King
county, Tallman, J., entered March 12, 1909, upon the ver-
dict of a jury rendered in favor of the plaintiff, for personal
injuries sustained by an employee in charge of a derrick.
Reversed.

*Robertson, Miller & Rosenhaupt*, for appellants.

*Roberts, Battle, Hulbert & Tennant*, for respondent.

MORRIS, J.—The appellants were engaged in building a
sea wall between Seattle and Everett, for the Great Northern
Railway Company, and respondent was in charge of one of

[1]Reported in 105 Pac. 138.

the derricks that were used in lifting the stone and placing it in its proper place in the wall. On the day of respondent's injury, a chain used in wrapping the rock broke, letting the rock fall, and respondent was injured. The respondent first noticed that this chain was defective on the day previous to the accident, and the theory of the respondent is that on that day he called the attention of one Helliesen, whom he alleges was the superintendent of appellants, to this defective chain, and that Helliesen agreed and promised to repair it or replace it with a new one, and relying upon this promise he continued at work until his injury, believing at the time of the injury that the defect had been repaired. The appellants denied any negligence, and set up assumption of risk and contributory negligence. Upon the trial plaintiff recovered, and the case is brought here with numerous assignments of error. The court's failure to sustain appellants' challenge to the sufficiency of the evidence and motion for judgment will be the only one we will consider.

It appears from the evidence that the general foreman in charge of the work was Mr. Armstrong; that in charge of each derrick was a stone mason, whose duty it was to select the stone, convey it by means of the derrick to the wall, and see that it was properly placed therein. In this work he was assisted by several men who were under his directions. Respondent was the stone mason in charge of one of these derricks. His relation to the work can best be described by his own testimony. He says Armstrong was the general foreman, but that he (respondent) was supposed to look after the wall; that he never was instructed there was any other foreman; and that in the absence of Armstrong there was no one to give him orders. He had general supervision over his derrick crew.

At the time of the accident, Armstrong was not at the work, and respondent says that, when he discovered the defective chain the day before the accident, he spoke to Helliesen and told him he could not use that chain because some

of the links' were worn and dangerous to use; that Helliesen told him he could not give him another chain, but that he would get that one fixed, and to "go ahead and work." He says, when asked who Helliesen was, that he was the man who took Armstrong's place, when Armstrong was absent; "he was timekeeper and foreman, the way I called him." All the other evidence was to the effect that Helliesen was only a timekeeper, and bookkeeper; that in addition he had charge of the supplies and furnished the men with tobacco, overalls, etc.; that he had no part at all in the doing of the work, nor any authority as to the manner of its construction, nor of the tools and appliances used; that in the absence of Armstrong, these matters were in charge of the stone mason who acted as boss or foreman over each derrick crew. Armstrong says that Helliesen was authorized by him to order any tools or supplies needed by the derrick men which were not at hand, but this was done because he was the bookkeeper or clerk; that he had no independent authority to do this except as he was authorized by him upon the request of the derrickmen. It also appeared that, in the absence of Armstrong, he had been authorized to hire men when needed. Respondent had the same authority. He received $80 per month while respondent was paid five dollars a day. The testimony of the other members of the derrick crew was that the stone mason was the boss of each crew, and when chains needed repair or new ones were required they obtained them from the blacksmith; that frequently respondent directed them to do so; at other times they did so on their own motion.

It is apparent from the entire record that Helliesen was not a superintendent or foreman of the appellant; nor did he occupy any such relation to appellant as to make him a vice principal. He was nothing more than a clerk in charge of the accounts and supplies. He had nothing to do with either the doing of the work or the selection of appliances, which rested entirely under the direction of Armstrong, and

in his absence respondent, as foreman or head man of his derrick crew, was his own boss.

This court has gone as far as any court in defining vice principals, but in each case the vice principal was doing the work or performing the duty imposed by law upon the master, under the authority and direction of the master. Helliesen, who denied the conversation with respondent, is not shown to have had any such authority, nor to have been given any such direction. He had nothing to do with the manner of conducting the work. He gave no directions. He selected none of the appliances used. Nor was he in any way related to the work as to either time, place, material, tools, direction, or any other relation generally assumed by the master or his vice principal. The wages paid the two men—$80 a month to Helliesen and five dollars a day to respondent, is a circumstance, perhaps slight, but showing to some extent the relative positions occupied by them in this work. While as between the conflicting statements of respondent and Helliesen as to Helliesen's alleged promise to repair the chain or supply a new one, we cannot decide, it being a contested question of fact to be determined by the jury alone; yet we may determine whether there is any evidence to warrant a finding that Helliesen was a vice principal or was clothed with any authority to bind the appellants upon his promise to repair, so as to bring the case within the rule contended for by respondent. We can find no such evidence. On the other hand, there does not appear to be any dispute but that the men in this crew took it upon themselves to procure their own chains from the blacksmith when needed, or to use cold-shuts which had been provided by appellants for temporary use, and that they were at times directed to do so by respondent. Before the appellants could be charged with the acts of Helliesen, it must appear that he was acting within the scope of his authority; that he was doing something they had clothed him with apparent authority and direction to do, and there is no evidence in this case that he had any authority or

direction at all over the appliances used in the work. The fact that respondent testified Helliesen was a foreman and gave directions did not furnish any evidence to submit that question to the jury, as such testimony was a mere conclusion of the respondent. Helliesen's authority on the work and the extent to which he could bind appellants must be determined from the relation he bore to the work, what was done by him, what was said by him, which was apparently authorized or acquiesced in by appellants, and not by the name or character that respondent might give him in his testimony. Agency when it has become a triable issue must be proved, as any other fact is proved. It is not proved by evidence that the person dealing with him thought he was an agent or called him an agent, or that he assumed the authority of an agent.

Hence, assuming there was a promise to repair, it was not made by the master nor any vice principal, nor could it bind the master. There is no dispute but that respondent had charge of the derrick and its crew, nor that the men whenever they wanted a tool or a chain repaired, took them down to the blacksmith, or made use of one of the cold-shuts. They did not require any authority or permission from any one to do this. The chains broke frequently, and the men as frequently had them repaired, and except the testimony of respondent, the only evidence of any direction given the men was such as was given by respondent. Being of such a frequent occurrence, all the men knowing it, danger from a broken chain was one of the open dangers and ordinary risks of the work, and the rule of assumption of risk would apply, unless there was something to bring the case within some recognized exception, which the evidence in this case does not disclose. If there was any evidence that appellants had assigned the duty of inspecting chains and repairing them, or replacing them with new ones, to Helliesen, then, while so engaged, whatever may have been his general employment or by whatever rank or title his position was known, he would

have been the representative of appellants. It is not a question of rank among the different employees, but it is a question of the character of the act, and the servant or employee who is delegated by the master to perform a duty which the law imposes upon the master is, in the performance of such duty, the *alter ego* of the master, and his act is the master's act. There is no such case before us, and the law cannot supply what the facts omit.

The court below should have sustained appellants' challenge to the evidence, and granted the motion for judgment. Its refusal to do so was error.

The judgment is reversed, and the cause remanded with directions to dismiss.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., concur.

FULLERTON, J. (dissenting)—In my opinion there was error in the record requiring a new trial, but I am unable to concur in the conclusion that the evidence was insufficient to justify a verdict for the plaintiff. I therefore dissent.